UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

Elijah J. Scott,

Plaintiff,

v.

SouthCo Commercial Curb Appeal,

Defendant.

Case No.: 4:26-CV-1977-JD-MGB

COMPLAINT FOR VIOLATION OF TITLE VII (RETALIATION)

Plaintiff Elijah J. Scott, proceeding pro se, alleges as follows:

I. PARTIES

1. Plaintiff Elijah J. Scott is a resident of South Carolina.

2. Defendant SouthCo Commercial Curb Appeal is an employer doing business in South Carolina and is subject to Title VII of the Civil Rights Act of 1964.

II. JURISDICTION

3. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

4. This Court has jurisdiction under 28 U.S.C. § 1331.

5. Venue is proper because the events giving rise to this action occurred in this district.

III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

7. The EEOC issued a Notice of Right to Sue dated February 17, 2026.

8. This Complaint is timely filed within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue.

IV. FACTUAL ALLEGATIONS

9. Plaintiff was employed by Defendant.

10. During Plaintiff's employment, Plaintiff experienced ongoing workplace issues involving a coworker, including conduct Plaintiff believed to be inappropriate and racially insensitive.

11. Plaintiff raised concerns regarding workplace conduct on multiple occasions, and management was aware of Plaintiff's concerns.

12. Plaintiff had not been disciplined prior to the events at issue and had received positive feedback regarding his work performance.

13. A coworker repeatedly referred to Plaintiff as "Bubba." After the term was used more than once, Plaintiff informed the coworker that Plaintiff found the term offensive and asked not to be called that again.

14. In response, the coworker stated, "It doesn't mean anything bad. I've lived in the hood," which Plaintiff reasonably believed to be racially insensitive and offensive.

15. Despite Plaintiff's request that the conduct stop, the coworker referred to Plaintiff as "Bubba" again on or about June 27, 2025.

16. Plaintiff reported the conduct to management and expressed concerns that the repeated use of the term "Bubba," after Plaintiff requested that it stop, together with the coworker's statement, "I've lived in the hood," was racially insensitive and offensive. Plaintiff reasonably believed the conduct was discriminatory and inappropriate.

17. Plaintiff's supervisor, Linda, responded that the coworker "did not mean anything by it," compared the conduct to being called "sweetie," and stated there was "no need to beat a dead horse." Plaintiff was advised that Plaintiff could submit a written statement regarding the concerns.

18. Plaintiff reasonably believed Defendant would not meaningfully address the conduct or prevent it from continuing.

19. Plaintiff informed management that Plaintiff needed to leave work to gather himself and communicated an intent to return to work the following day.

20. Within days of Plaintiff reporting concerns regarding conduct Plaintiff reasonably believed to be discriminatory, Plaintiff was removed from the work schedule on or about June 29, 2025.

21. Plaintiff later contacted management regarding the removal from the schedule and did not receive a clear explanation.

22. On or about June 30, 2025, Plaintiff participated in a meeting with HR and Defendant's owner regarding Plaintiff's concerns and removal from the work schedule.

23. During the discussion, Plaintiff asked Defendant's representatives how they felt about the use of the term "Bubba" after Plaintiff had asked that it stop. In response to Plaintiff's concerns, a representative stated that she understood "where we are in this country" and "where we are in this state," and indicated that some people may view such conduct differently. Plaintiff believed this response minimized Plaintiff's concerns and did not provide assurance that the conduct would stop.

24. During the June 30, 2025 meeting, Plaintiff was also told Plaintiff should have completed the work shift.

25. The stated reason for Plaintiff's removal from the schedule was characterized as attendance-related; however, Plaintiff had communicated the absence and intent to return.

26. The timing of Plaintiff's removal from the work schedule occurred shortly after Plaintiff's complaint regarding conduct Plaintiff reasonably believed to be discriminatory.

27. Defendant's own workplace policies prohibit harassment and retaliation against employees who report workplace concerns in good faith.

28. Based upon management's responses and Plaintiff's removal from the work schedule shortly after Plaintiff's complaint, Plaintiff reasonably believed concerns would not be meaningfully addressed.

29. Plaintiff resigned on or about June 30, 2025.

V. CLAIM FOR RELIEF

(Retaliation – Title VII)

30. Plaintiff engaged in protected activity by reporting conduct Plaintiff reasonably believed to be discriminatory and racially insensitive.

31. Shortly after engaging in this protected activity, Plaintiff was removed from the work schedule.

32. The close temporal proximity between Plaintiff's complaint and the adverse employment action supports an inference of retaliatory intent.

33. Defendant's stated reason for the adverse action is inconsistent with Plaintiff's communication regarding the absence and intent to return.

34. As a direct result of Defendant's actions, Plaintiff suffered damages including lost wages, emotional distress, and related harm.

VI. DAMAGES

35. Plaintiff seeks:

• Back pay and lost wages

• Compensatory damages

• Emotional distress damages

• Any additional relief the Court deems appropriate

VII. JURY DEMAND

37. Plaintiff demands a trial by jury.

VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment in Plaintiff's favor and all relief permitted by law.

Respectfully submitted,

Elijah J. Scott (Pro Se)

17 Golden Ct

Columbia, SC 29203

(803) 357-0537

elijahjscott1212@gmail.com

Date: 5/15/2026